

FILED
DEC 06 2021

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| LAUREL J. BUSCH,<br><br>Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI,[1] ACTING<br>COMMISIONER OF SOCIAL SECURITY<br><br>Defendant. | 1:21-CV-01002-CBK<br><br><br><br>**MEMORANDUM AND ORDER** |

On September 20, 2021, plaintiff Laurel Busch ("plaintiff") moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 and 42 U.S.C. § 405(g), for judgment as a matter of law. Doc. 20. The claimant requests that this Court review the final decision of Acting Commissioner of Social Security Kilolo Kijakazi ("Commissioner")'s denial of Social Security Disability Income ("SSDI") benefits prior to April 1, 2019. Specifically, plaintiff challenges the ALJ's finding below on the proper Established Onset Date ("EOD") from when Busch was sufficiently impaired so that she may be awarded SSDI Benefits. The Commissioner filed her response on November 4, 2021, doc. 23, and Ms. Busch replied on November 9, doc. 24. Because the Administrative Law Judge ("ALJ")'s decision below is not supported by substantial evidence, this matter must be remanded for further adjudication.

## I.   BACKGROUND

Ms. Busch is a 61-year-old resident of Aberdeen, South Dakota suffering from a host of ailments, including diabetes mellitus, obesity, residuals of right ankle fracture,

---

[1] Ms. Busch originally named then-Commissioner of Social Security Andrew Saul as defendant. Dr. Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, six months after Ms. Busch filed her complaint with this Court. Pursuant to Federal Rule of Civil Procedure 25(d), Dr. Kijakazi is automatically substituted as the defendant in all pending social security cases.

osteoarthritis, and, notable to this matter, degenerative disc disease of the lumbar spine with neurogenic claudication[2] and irritable bowel syndrome ("IBS"). The claimant filed her applications for Disability Insurance Benefits and Supplemental Security Income on May 6, 2015, with an alleged EOD of December 14, 2012. The justification for this 2012 EOD was her anxiety, ankle pain, hip pain, and back pain. Ms. Busch's claim was first denied by an ALJ and again on reconsideration by the Social Security Administration ("SSA") Appeals Council on April 19, 2016. Plaintiff subsequently requested a hearing before an ALJ, which denied her claims on January 18, 2018, following her first hearing on November 7, 2017. However, the Appeals Council disagreed with the ALJ's findings, remanding the case back to the previous ALJ in November 2018 for further adjudication on Busch's back-related ailments. Developments following this remand by the Appeals Council are particularly relevant to the plaintiff's present motion for summary judgment.

On remand, Administrative Judge Richard Hlaudy held a hearing on April 22, 2019, which was ultimately postponed so Ms. Busch could retain counsel. Several months later, on November 19, 2019, Administrative Judge Hallie Larsen conducted the third and final hearing for Ms. Busch's matter, where the claimant testified about her back-related pain and inhibitions in her daily life that it has caused, as well as the severe anxiety-inducing IBS which makes it difficult to venture far from her home due to fear of diarrhetic episodes. In this hearing, Ms. Busch went into detail about her treatment with two treating physicians, Orthopedic Surgeon James MacDougall for back-related ailments and Family Physician Jonathan Olson for other impairments such as anxiety and IBS. These two doctors' records and opinions were crucial for Judge Larsen's ultimate decision on finding Ms. Busch severely impaired and on when the EOD should properly be placed.

---

[2] Neurogenic claudication "results from compression of the spinal nerves in the lumbar (lower) spine." COLUMBIA UNIV. IRVING MEDICAL CTR. NEUROSURGERY, NEUROGENIC CLAUDICATION, https://www.neurosurgery.columbia.edu/patient-care/conditions/neurogenic-claudication (last visited Dec. 1, 2021). See also Jemison v. Saul, 2020 WL 7258515, at *7 n.23 (E.D. Pa. Dec. 10, 2020) ("Neurogenic claudication is limpness or lameness accompanied by pain and paresthesias in the back, buttocks, and lower limbs, relieved by stooping or sitting, usually caused by lumbar spinal stenosis . . . Neurogenic claudication is also known as pseudoclaudication . . . which is the term utilized in the Commissioner's Listings.") (citing Neurogenic Claudication, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 369, 1265, 1541 (32d ed. 2012)).

Administrative Judge Larsen found Ms. Busch disabled, but did not determine her EOD to be until April 1, 2019, a few months after her Date of Last Insurance ("DLI") of December 31, 2017, and several years after Busch's alleged 2012 EOD. Because Busch was not found disabled until after her DLI, she received only Supplemental Security Income benefits, *not* SSDI benefits. The crux of this determination was that while Judge Larsen found Busch to be severely impaired by her degenerative disc disease of the lumbar spine with neurogenic claudication in January 2018, the ALJ held Busch was not severely impaired by her IBS until April 1, 2019. Only with the IBS did the ALJ find the claimant sufficiently disabled, thus leading to an EOD of April 2019. Ms. Busch sought reconsideration of Judge Larsen's March 2020 decision to the SSA Appeals Council, which ultimately upheld the ALJ's determination below on November 13, 2020. This denial of reconsideration made Judge Larsen's disposition of what the proper EOD should be, and the larger question of Ms. Busch's disability application, the position of the Acting Commissioner.

The plaintiff filed her complaint appealing the Commissioner's decision to this Court on January 19, 2021. Having filed her motion for summary judgment on September 20, 2021, with all briefing having finished November 9, 2021, this matter is now ripe for adjudication, six and a half years after Busch's initial protective filing.

## II.   DISCUSSION
### A. Legal Standard

"To be eligible for disability insurance benefits, a claimant has the burden of establishing the existence of a disability under the Act." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (*citing* 42 U.S.C. § 423(a)(1)(D)). Judicial review of the Commissioner's decision that the claimant has failed to establish by a preponderance of the evidence that she is disabled within the meaning of the Social Security Act – or when the impairment became sufficiently disabling – is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole. Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013). "'Substantial evidence is less than a preponderance, but enough that a reasonable mind might find it adequate to

3

support the Commissioner's conclusions.'" Draper v. Colvin, 779 F.3d 556, 559 (8th Cir. 2015) (*quoting* Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007)). "We consider both evidence that detracts from the Commissioner's decision, as well as evidence that supports it, but we will not reverse simply because some evidence supports a conclusion other than that reached by the Commissioner." Fentress v. Berrhill, 854 F.3d 1016, 1020 (8th Cir. 2017) (internal citation omitted) (*citing* Pelkey v. Barnhart, 433 F.3d 575, 578 (8th Cir. 20006)).

The review of a decision to deny benefits is "'more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision.'" Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (*quoting* Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJs] decision.'" Grindley v. Kijakazi, 9 F.4th 622, 627 (8th Cir. 2021) (alterations in original) (*quoting* Perks v. Astrue, 274 F.3d 1211, 1217 (8th Cir. 2001)).

When there is a determination that the claimant *is* entitled to disability benefits, the ALJ's determination of when the Established Onset Date is can be critical: if the ALJ properly finds Busch's impairment was only disabling *after* her Date of Last Insurance, she will not be entitled to disability benefits. See Thomas v. Chater, 933 F.Supp. 1271, 1274 (D.V.I. 1996), order amended, 945 F.Supp. 104 (D.V.I. 1996) ("Evidence of an impairment that became disabling *only after* the date of being last insured *cannot* be the basis for the determination of entitlement for disability benefits, even though the impairment may have existed before a claimant's insured status expired.") (emphasis added) (*citing* Arnone v. Bowen, 882 F.2d 34, 38 (2nd Cir. 1989)). See also Walker v. Colvin, 124 F.Supp.3d 918, 932 (E.D. Mo. 2015) ("To be entitled to disability benefits under Title II, plaintiff has the burden of showing he was disabled prior to September 30, 2006, the date he was last insured . . . [T]o be entitled to Title II benefits, plaintiff must prove he was disabled before his insurance expired.") (*citing* Jenkins v. Colvin, 2014 WL

4

1259771, at *2 (E.D. Mo. Mar. 26, 2014); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)).

Factors to consider when determining the EOD are found in Social Security Ruling ("SSR") 18-01p, "Titles II and XVI: Determining the Established Onset Date (EOD) in Disability Claims." 2018 WL 4945639 (Oct. 2, 2018).[3] For non-traumatic or exacerbating and remitting impairment, such as for Ms. Busch, SSR 18-01p provides the following guidance:

> We consider whether we can find that the claimant first met the statutory definition of disability at the earliest date within the period under consideration, taking into account the date the claimant alleged that his or her disability began. We review the relevant evidence and consider, for example, the nature of the claimant's impairment; the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings. The date we find that the claimant first met the statutory definition of disability may predate the claimant's earliest recorded medical examination or the date of the claimant's earliest medical records, but we will not consider whether the claimant first met the statutory definition of disability on a date that is beyond the period under consideration.

Id. at *6. Unlike its predecessor SSR 83-20, under SSR 18-01p the ALJ is no longer required to call a Medical Expert ("ME") to infer the date that the claimant first met the statutory definition of disability. See Royal v. Comm'r of Soc. Sec. Admin., 2021 WL 4190647, at *2 (S.D. Miss. Aug. 3, 2021) (noting that SSR 18-01p explicitly "states that an ALJ 'may, but is *not required to*, call upon the services of a ME, to assist with inferring the date that the claimant first met the statutory definition of disability.'") (emphasis added) (*quoting* Kushner v. Comm'r of Soc. Sec. Admin., 765 Fed.Appx. 825, 829 n.3 (3rd Cir. 2019) (*unpublished*)). See also Ramon Ochoa v. Berryhill, 2019 WL

---

[3] SSR 18-01p was promulgated on October 2, 2018, reinterpreting how the EOD should be determined for claims "involv[ing] traumatic, non-traumatic, and exacerbating and remitting impairments," replacing and rescinding longstanding SSR 83-20, "Titles II and XVI: Onset of Disability." And with SSR 18-02p replacing SSR 83-20's "Title II: Blindness Cases" and "Title XVI – Specific Onset is Necessary," as applied to blindness claims, "SSR 83-20 is completely rescinded and replaced by SSR 18-01p and SSR 18-02p." SSR 18-01p, "Titles II and XVI: Determining the Established Onset Date (EOD) in Disability Claims, 2018 WL 4945639, at *1 (Oct. 2, 2018).

5

1596368, at *7 n.6 (D.N.M. April 15, 2019) ("Unlike SSR 83-20, SSR 18-01p expressly permits the ALJ to 'infer' an onset date and emphasizes that the decision to call on a medical advisor 'is always at the ALJ's discretion.'") (*quoting* SSR 18-01p, "Titles II and XVI: Determining the Established Onset Date (EOD) in Disability Claims, 2018 WL 4945639 at *6 (Oct. 2, 2018)).

SSR 18-01p's unambiguous statement that the ALJ is not required to call upon a ME in these circumstances is different than this Court's authority to order an ALJ to procure clarifying statements from a treating physician when crucial issues remain undeveloped in the administrative judge's record. See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) (clarifying the ALJ is only required to "seek additional clarifying statements from a treating physician" when "a crucial issue is undeveloped.") (*citing* Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004)). See also Olson v. Colvin, 2016 WL 3747878, at *5 (N.D. Iowa July 8, 2016). SSR 18-01p and prior case law make clear this Court cannot require an ALJ to call upon an ME when inferring the date a claimant has first met the statutory definition of disability, but can order the ALJ to develop the record further through obtaining clarifying statements from a treating physician when crucial issues are undeveloped as to which he likely can provide material information, such as instances where open questions remain on discerning a non-arbitrary EOD.

"'An arbitrary onset date selection will not be accepted by a reviewing court.'" Philips v. Comm'r of Soc. Sec., 2021 WL 2550387, at *12 (E.D.N.Y. June 22, 2021) (*quoting* Ahisar v. Comm'r of Soc. Sec., 2015 WL 5719710, at *8 (E.D.N.Y. Sept. 29, 2015)). The ALJ's determination for the EOD cannot blindly place the onset date on the day of a medical exam, a fixed number of weeks or months before a certain diagnosis, or based upon the filing of a claim. The United States Court of Appeals for the Fifth Circuit "found arbitrary an onset date determination similarly set six months prior to the date of the examination that revealed the impairment." Ray L. v. Kijakazi, 2021 WL 3742023, at *7 (S.D. Tex. Aug. 24, 2021) (*citing* Spellman v. Shalala, 1 F.3d 357, 363 (5th Cir. 1993)). Instead, in Ray L. v. Kijakazi, the District Court for the Southern District of Texas

6

found the onset date *not* arbitrary when the ALJ "gave great weight to the testimony of [an ME] that a *reasonable medical probability* supports an onset date that is five months before Plaintiff's December 2015 consultative examination." Id. (emphasis in original). Further, "[c]ourts have found 'the date on which the claimant applied for SSI benefits, received a consultative examination, or appeared before an ALJ at an administrative hearing' to be arbitrary dates requiring remand.'" Philips, 2021 WL 2550387, at *12 (*quoting* McCall v. Astrue, 2008 WL 5378121, at *18 (S.D.N.Y. Dec. 23, 2008)).

Lastly, the ALJ "must act neutrally in [fully] developing the record." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). This obligation is regardless of whether the claimant retained counsel. See Wellman v. Berryhill, 2017 WL 5990116, at *19 (D.S.D. Nov. 9, 2017) ("[T]he duty of the ALJ to develop the record – with or without counsel representing the claimant – is a widely recognized rule of long standing in social security cases."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mouser v. Astrue, 545 F.3d 634, 639 (8th Cir. 2008) (*citing* Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994)).

### B. ALJ's January 2018 EOD for Degenerative Disc Disease

First, plaintiff argues the ALJ's finding that her degenerative disc disease was only a severe impairment beginning in January 2018, one month after her DLI, is not supported by substantial evidence. Critical to plaintiff's case is that the ALJ found her only to be severely impaired in the month where she received her MRI confirming degenerative disc disease of the lumbar spine with neurogenic claudication, which ventures into concerns of an arbitrary EOD. Because the selection of an EOD of the month when Ms. Busch received the MRI confirming the neurogenic claudication was arbitrary, as well as the ALJ's failure to consider the December 26, 2017, emergency room visit, the ALJ's decision was not supported by substantial evidence.

The ALJ begins her analysis by noting Ms. Busch was first seen for hip and back pain in August 2017 after a fall, where she was found to have "moderate degenerative disc disease at L1-2 and L4-5. Mild degenerative changes at the remaining lumbar levels. Moderate lower thoracis spondylosis." Administrative Record ("A.R.") 1002. See also ALJ Opinion[4] 29, 32 (ALJ discussing August 2017 visit). On their own, the ALJ notes, these impairments "did not cause a more than minimal impact on the claimant's ability to carry out work-related activities. Therefore, they were non-severe." Id. at 29. If there was no further development of the record, her finding of an EOD five months later would hold. However, subsequent developments require further scrutiny.

After noting this August 2017 visit, the ALJ proceeded to examine the plaintiff's health since 2012 – plaintiff's alleged EOD –, when she was "let go from her position secondary to missing too much work due to lower extremity swelling." Id. at 31. The administrative judge proceeded to look at her history of health-related challenges spanning from her 2009 fall resulting in internal fixation surgery and installation of hardware, Id. at 31, to the present, making notes of Busch's several complications as well as the fact she has "had issues of non-compliance . . . at times discontinuing her [diabetes] medication without consulting her provider." Id. at 32.

Crucially, the ALJ moves between the August 2017 emergency visit and the January 2018 MRI without taking note of the December 26, 2017, emergency room visit. In the December 2017 visit to the emergency room in Aberdeen, the plaintiff complained of "right hip area pain . . . [t]oday she declares of right hip area pain plus right thigh area pain . . . [s]he denies low back pain." A.R. 990. Busch's reported pain in the December 2017 hospital visit are symptoms of the neurogenic claudication as to which she will be diagnosed having mere days later. See COLUMBIA UNIV. IRVING MEDICAL CTR. NEUROSURGERY, NEUROGENIC CLAUDICATION, https://www.neurosurgery.columbia.edu/patient-care/conditions/neurogenic-claudication (last visited Dec. 1, 2021) ("The symptoms of neurogenic claudication can include pain,

---

[4] While the ALJ's opinion is a part of the Administrative Record, it is cited differently for clarity.

tingling, or cramping in the lower back and one or both legs, *hips*, and buttocks." (emphasis added). See also CLEVELAND CLINIC, SPINAL STENOSIS, https://my.clevelandclinic.org/health/diseases/17499-spinal-stenosis (last visited Nov. 19, 2021) ("Can spinal stenosis cause pain in my groin, *hip*, *thigh*, and calf? Yes.) (Emphasis added). Because of the pain in this December 2017 visit, Ms. Busch received 50 mcg of fentanyl. A.R. 990.

While the ALJ failed to take notice of this December 2017 visit, the Commissioner did not in her briefing. See DEFENDANT'S BRIEF, doc. 23 at 8. The Commissioner rightly points out Busch denied lower back pain in this visit, but that is not the only symptom paving way to indicia of degenerative disc disease of the lumbar spine with neurogenic claudication. Instead, Busch complained of pain in her thigh and hip. Plaintiff rightly notes in her reply brief that "the December 26, 2017[,] exam clearly supports the severity of [her] back impairment prior to her December 31, 2017 [DLI]." REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, doc. 24 at 3. On January 5, 2018 – only ten days after the emergency room visit –, Ms. Busch received an MRI that would lead to her January 10, 2018, diagnosis of spinal stenosis of lumbar region with neurogenic claudication. See A.R. 987 (documentation for January 5, 2018, MRI); id. at 973 (diagnosis).

Because of this January 2018 diagnosis, the ALJ noted that "[t]he objective findings are greater in January of 2018 (after the date last insured) regarding her back problems)." ALJ Opinion 33. While the ALJ notes that "[the claimant] was seen for complaints of back pain as of January 2018," her reported symptoms on December 26, 2017, *before* her DLI, are likely tied to the January 2018 diagnosis. Id. at 34. Further, the fact that an x-ray in the December 2017 visit showed no "fracture involving the pelvis or right femur" lends further credence to the notion that the January 2018 diagnosis is tied to the same pain that brought Busch into the hospital on December 26, 2017. A.R. 994. As plaintiff notes, "[o]ne could speculate that [her] pain in her hip and leg was being referred from her back condition, but speculation is not necessary, because when Busch was seen on January 10, 2018[,] by the orthopedic specialist she made *very similar*

9

*complaints* of severe right leg pain, ([A.R.] 970), and the orthopedist exam revealed pain findings in the right trochanteric bursa, and based on his exam and the imaging the orthopedist diagnosed spinal stenosis of the lumbar region with neurogenic claudication and trochanteric bursa of the right hip." REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, doc. 24 at 3 (emphasis added).

While the complaints listed in the January 10, 2018, visit are more detailed than the emergency room notes on December 26, 2017, this may be because Dr. Zhi Zhang, the emergency room physician, simply was more time-pressed when tackling the innately hectic demands of an E.R than the Orthopedic Surgeon who ultimately diagnosed Busch a few weeks later. Additionally, common sense infers that the January 2018 MRI is displaying the plaintiff's condition of degenerative disc disease of the lumbar spine with neurogenic claudication that existed five days prior, before the DLI. See, e.g., Margaret L.P. v. Comm'r of Soc. Sec., 2019 WL 2353572, at *5 (W.D. Wash. June 4, 2019) ("The ALJ also erred by failing to consider whether the medical evidence dated after the date last insured supports an inference of disability at an earlier date, as required by SSR 18-1p . . . [in this instance] the ALJ did not discuss the fact that the MRI and bone biopsy findings from February and March 2010 relate back prior to Plaintiff's date last insured [which was December 2009]"). And if the condition was exacerbated by the August 2017 fall, then the development of the worsened condition shown on the January 5, 2018, MRI likely could have spawned before January 2018.

Regardless, the ALJ's findings cannot withstand the substantial evidence standard of review when she did not take note of this December 26, 2017, hospital visit where similar reports of pain were made that would ultimately lead to the diagnosis in January 2018, the diagnosis at the heart of the administrative judge's finding of impairment in January 2018 as opposed to before the DLI of December 31, 2017. Through a more complete analysis of the administrative record, particularly the December 26, 2017, emergency room visit, only then can the ALJ's findings be awarded deference under the substantial evidence standard. The dating of this condition the same month that the MRI offered the ultimate diagnosis is the very sort of arbitrary selection of dates that the U.S.

District Court for the Eastern District of New York warned about: "Courts have found 'the date on which the claimant applied for SSI benefits, *received a consultative examination*, or appeared before an ALJ at an administrative hearing' to be arbitrary dates requiring remand.'" Philips v. Comm'r of Soc. Sec., 2021 WL 2550387, at *12 (E.D.N.Y. June 22, 2021) (*quoting* McCall v. Astrue, 2008 WL 5378121, at *5 (S.D.N.Y. Dec. 23, 2008)). Selecting an onset date for when the MRI showed the "dynamic instability of grade I-II spondylolisthesis at L4-5 causing severe foraminal narrowing and stenosis at L4-5" is the sort of "arbitrary onset date selection . . . not [to] be accepted by a reviewing court." ALJ Opinion 32, Philips, 2021 WL 2550387, at *12 (*quoting* Ahisar v. Comm'r of Soc. Sec., 2015 WL 5719710, at *8 (E.D.N.Y. Sept. 29, 2015)). Instead, the ALJ must factor the December 2017 visit into her calculus when determining whether the MRI inferred an onset of the condition prior to the DLI.

This Court is not commanding the ALJ to come out one way or the other on determining the proper date as to which to place the degenerative disc disease of the lumbar spine with neurogenic claudication. Perhaps the ALJ below will still find there is not enough evidence in the record – after considering the December 2017 hospital visit – for a finding before the DLI. Whether or not this Court may find that the January 5, 2018, MRI is likely indicative of these significant health issues before the DLI – only five days prior – is not material to the ALJ. Rather, what matters is that on remand the ALJ consider the *full* administrative record, i.e., the December 2017 visit, before making her determination on whether the condition severely impaired Busch prior to the DLI.

### C. Commissioner's April 2019 EOD Determination for Anxiety-Induced IBS

Next, Ms. Busch claims that the ALJ erred by selecting the EOD for her IBS to be April 1, 2019, opposed to a date prior to the DLI, December 31, 2017. In turn, the Commissioner argues there is "no merit" for an earlier EOD, despite the fact the ALJ misdated crucial language from Busch's treating physician. DEFENDANT'S BRIEF, doc. 23 at 9. While the ALJ had ample evidence to determine the EOD was not as early as 2012 – which the plaintiff claims it to be – she failed to properly identify when important statements were provided by Busch's physician, Dr. Olson, thus improperly citing

11

assertions from different records as to which she appears to have awarded different weight.

The driver for Ms. Busch's bowel-related challenges is her anxiety. See, e.g., A.R. 968 ("[Busch] has also had some other side effects from the anxiety. It has caused her issues with bowel function and this has been disruptive in her daily life."). While Ms. Busch states that her EOD should be 2012, in part due to her anxiety, her state disability determination file noted that on July 3, 2014, she *denied* experiencing anxiety, while also acknowledging that her "record states that [claimant] has had anxiety since 1997." See id. at 166. On reconsideration of denial of benefits, the agency did again note Busch "does have a past medical history of anxiety," before ultimately denying her disability claim once more. Id. at 213; see id. at 207–20. The ALJ ultimately gave "great weight to the State agency psychological consultants' assessments of non-severity," noting the "minimal mental health treatment" in earlier years. ALJ Opinion 33. Having examined the state records, records which show inconsistencies on when Ms. Busch had anxiety-induced bowel issues, the ALJ properly addressed these prior records.

However, other records from years prior do support Busch's assertion that her anxiety-induced severe bowel issues stem well before her DLI. On January 6, 2016, notes in her Disability Report – Appeal – Form SSA-3441 made bare that due to her anxiety, Busch is "not able to make it very far from the bathroom." A.R. 545. Busch cites to this record in her briefing to note that "her anxiety level had increased, and there were times she did not make it to the toilet." MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, doc. 22 at 7 (*citing* A.R. 554). Crucially, though, the plaintiff fails to cite to the rest of the sentence in her summary judgment memorandum: "I do not make it to the toilet *as it hurts too bad to step on my ankle*." A.R. 554 (emphasis added). While the record undoubtedly references her anxiety and her bowel-related challenges, this specific record is more equivocal on when the anxiety-caused bowel issues – unrelated to any ankle or spinal issues – became debilitating. With this record inconsistent on the source of Busch's inability to make it to

12

the bathroom – whether it is due to the severe anxiety or the ongoing ankle injury –, the ALJ did not err by denying a finding of an EOD as early as January 2016.

Critical to plaintiff's present argument is the July 26, 2017, letter from her treating physician, Dr. Olson. See id. at 968. The ALJ is correct in noting that the July 2017 Olson letter is "vague, ambiguous and without specific vocationally relevant limitations." ALJ Opinion 34. At only four lines, the letter is brief in its assertions, specifically that: (1) Busch is "currently on medication for anxiety;" (2) the dosage has recently increased because of "added stresses in her life;" (3) "[s]he has also had some other side effects from the anxiety;" namely (4) causing bowel function issues which have "been disruptive in her daily life." A.R. 968. The administrative judge was well within her confines to assert that "[l]ittle weight" is afford to Olson's 2017 letter. ALJ Opinion 34. Vexingly, though, the ALJ proceeded to cite from this 2017 letter to emphasize the point that Busch's bowel issues "had been disruptive of her daily life." Id. at 35. The crux of the matter is that the ALJ wrongly credits this point to Olson's *April 2019* letter, the month where the administrative judge found Busch's EOD for the IBS. While stating she also offered the April 2019 Olson letter little weight, her decisions speak to the contrary.

In Dr. Olson's April 10, 2019, letter, Busch's treating physician delves into far more detail about the specific bowel issues the claimant endures, from traveling limitations caused by the IBS, the "embarrassment factor" it has led to in certain instances, and how the severity of the bowel issues are amplified through her anxiety. A.R. 975.[5] This letter was written a mere nine days after what the ALJ determines to be

---

[5] In her response brief, the Commissioner pushes against the value of this April 2019 letter by Dr. Olson because it was written in support of Busch's Social Security hearing. See DEFENDANT'S BRIEF, doc. 23 at 10. The Commissioner cites to four cases on why this Court should not put significant weight onto this letter, all of which are unpersuasive or irrelevant. First, the defendant cites to the United States Court of Appeals for the Eighth Circuit's holding in Hurd v. Astrue, where the doctor in question only treated the claimant a total of four times, which did not begin until seven months following the alleged onset date. 621 F.3d 734, 739 (8th Cir. 2010). Where Hurd's doctor only observed that the patient was "pleasantly helpful, but confused at times," Olson has a longer relationship with Busch spanning several years and visits. Id. (internal citation omitted). Further, when asked in a questionnaire which medical findings "support his opinion that [claimant] was disabled," Hurd's doctor left it blank. Id. (internal citation omitted). Unlike in Hurd, Dr. Olson was not retained specifically for the Social Security disability process, their relationship was not defined by the singular reason to assist in obtaining disability benefits, and Olson provided more comprehensive and detailed assistance to Ms. Busch. Next, the Commissioner cites to another Eighth Circuit panel decision, Shannon v. Chater, where the claimant's doctors "appear to be linked primarily to his quest to obtain benefits, rather than to obtain medical treatment." 54 F.3d 484, 486 (8th Cir. 1995).

the EOD for the IBS and it appears to be a critical source for the specific timing offered for the April 1, 2019, EOD as the singular record from this specific timeframe. Strangely, though, the ALJ also awards "[l]ittle weight" to the April 10, 2019 letter from Olson, as well as subsequent letters dated September 17, 2019, and October 21, 2019, because "they were made after the established onset date and do not relate back to prior [to] [sic] the established onset date." Id. at 34. While this April 10, 2019, letter is in fact nine days after the ALJ-determined EOD, it appears the April 1, 2019, EOD was decided *because* of Olson's April 10, 2019, letter. The April 10 letter cannot both be an important benchmark, *see* ALJ Opinion 35, for when the bowel issues became sufficiently disabling, while at the same time be offered "little weight" for being made *after* the EOD determination, when the EOD determination is seemingly anchored by this letter. Id. at 34–35. Further, the ALJ cannot be awarded deference because she mistakenly cites Dr. Olson's assertion that the bowel functioning issues were "disruptive of her daily life" to the April 2019 letter, when the assertion was made in the *July 26, 2017*, letter (which the ALJ also notes is given "little weight"), five months prior to the DLI and even further removed from the original EOD. Due to these interrelated inconsistencies, the ALJ's EOD for the bowel-related issues cannot withstand substantial evidence review.

---

The same cannot be said for Dr. Olson, who had a more active relationship with the plaintiff than in the facts presented in Shannon. Third, defendant cites to the unpublished Eighth Circuit decision in Aitchison v. Colvin, where the Veterans Affairs physician's statement filed only a month before the initial hearing was awarded "little weight" by the ALJ. 669 Fed.Appx. 819, 820 (8th Cir. 2016) (*unpublished*). Olson's involvement is more entrenched than that in Aitchison. Finally, the Commissioner cites to Renstrom v. Astrue, where the Eighth Circuit acknowledged the ALJ did not give one of the doctor's opinions "controlling weight because it was largely based on [claimant's] subjective allegations of pain, which the ALJ found not to be fully credible, and not supported by objective evidence." 680 F.3d 1057, 1064 (8th Cir. 2012). While the ALJ in this matter would be well within her rights to not award Olson's April 2019 letter great weight, this matter is distinguishable from Renstrom: there are not competing opinions about Busch's disability; rather, the documentation by Olson over several years (albeit not always in the most detailed manner) is in effect at the core of the ALJ's decision on what the IBS EOD should be, with no other treating physician offering starkly different prognoses. Accordingly, because Dr. Olson has been the plaintiff's treating physician for several years, did not write one-off opinion letters solely to boost her disability adjudication with only scant relationship to the claimant, and the fact that there are not disagreements among treating physicians, this Court gives Olson's letters greater weight than that offered by the ALJs in these other matters. However, the Court stresses it is within the ALJ's purview to determine the sufficient weight to award the Olson letters on remand.

The ALJ also points to denials of bowel problems by the plaintiff on numerous occasions, such as her January 10, 2018, hospital visit, A.R. 970, her December 26, 2017, emergency room visit, A.R. 990, and another emergency room visit on May 26, 2017, A.R. 1009. However, these reports relate to bowel *incontinence*, which is separate than her allegedly uncontrollable IBS. See Magnus Simrén et al., *Fecal Incontinence in Irritable Bowel Syndrome (IBS): Prevalence and Associated Factors in Swedish and American Patients*, 29(2) NEUROGASTROENTEROL MOTIL. 1, 9 (2017) (noting only 14–20% of those with IBS also suffer from fecal incontinence). See also A.R. 970 ("She has no bowel or bladder incontinence"); Id. at 990 ("She denies incontinence urinary or bowel"); Id. at 1009 ("She denies any . . . bowel or bladder incontinence or any other concerns."). True, Busch does not always report her IBS at emergency room visits and it does not always appear in her active problems list, but the fact she denies bowel *incontinence* is not sufficient to waive away all assertions she did not endure IBS at those same times. While at first glance the ALJ appears to be correct stating that "in January of 2018, bowel problems were specifically denied by the claimant," this assertion is not sufficiently specific to the matter at hand: yes, Busch denied bowel incontinence, but that does not mean she also denied other bowel-related challenges, specifically that because she did not explicitly make note of her uncontrollable bouts of diarrhea that she was also disclaiming all bowel-related maladies. ALJ Opinion 33.

Because of the inconsistencies in the ALJ's opinion on which letters are awarded what weight, and when and where certain statements by Dr. Olson were made, this matter must be remanded for further scrutiny. Ultimately, the ALJ may come out the same as before, that is within her discretion. But she cannot toss aside Olson's April 2019 letter while at the same time seemingly anchoring the EOD to this record. Further, the ALJ must accurately state which statements come from the April 2019 and July 2017 Olson letters, and make clearer which records are awarded what actual influence in determining the EOD, while also making critical distinctions between denials of bowel incontinence and anxiety-induced IBS. Only then can this Court defer to the ALJ's opinion under the

substantial evidence standard. And, as next discussed, the record must be more fully developed before such a decision may be affirmed.

### D. Whether Record is Fully and Fairly Developed

Lastly, the plaintiff argues the ALJ failed to fully and fairly develop the records from her treating physician, Dr. Olson, who managed her bowel-related complications. Busch's claim falls into two similar yet distinct arguments: (1) the ALJ's inconsistencies of citations on which day Olson stated which assertion concerning Busch's disability requires further development; and (2) purportedly missing documents authored by Olson spanning from January 4, 2016, to April 15, 2020, must be located and analyzed by the administrative judge. Only those statements or records that present crucial issues that remain undeveloped warrant remand to the ALJ for further analysis and discussion. See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). Each argument is addressed in turn.

1. *Administrative Court's Inconsistent Citations to Olson Records*

Busch asserts that the inconsistencies between the ALJ's weighing of different letters drafted by Olson two years apart and the mistaken citation of which pronouncements were derived from which record require further development of the record. She is right.

As previously explained, *supra* II.C., the mixing of which statements came from which Olson letter demand that the Court remand this matter for further proceedings at the administrative level. Unlike SSR 18-01p's unambiguous pronouncement that ALJs are not required to call upon MEs in making their determination,[6] this Court may still

---

[6] In one case cited in Plaintiff's brief, Emilio U. v. Saul, the District Court for the Eastern District of Washington *required* the ALJ below to call upon an ME in determining the correct EOD. See 2020 WL 7010226, at *8 (E.D. Wash. Oct. 14, 2020) ("On remand, the ALJ *shall call* a medical expert . . . to determine the appropriate onset of disability.") (emphasis added). This Court finds that district courts do not have such authority under the clear pronouncements of SSR 18-01p, which clearly hold that the ALJ "may, *but is not required to*, call upon the services of a medical expert (ME), to assist with inferring the date that the claimant first met the statutory definition of disability." SSR 18-01p, "Titles II and XVI: Determining the Established Onset Date (EOD) in Disability Claims." 2018 WL 4945639, at *2 (Oct. 2, 2018) (emphasis added). As another district court has aptly noted: "Unlike SSR SSR 83-20, SSR 18-01p expressly permits the ALJ to 'infer' an onset date and emphasizes that the decision to call on a medical advisor 'is always at the ALJ's discretion.'" Ramon Ochoa v. Berryhill, 2019 WL 1596368, at *7 n.6 (D.N.M. April 15, 2019) (*quoting* SSR 18-01p, "Titles II and XVI: Determining the Established Onset Date (EOD) in Disability Claims, 2018 WL 4945639 at *6 (Oct. 2, 2018)). See generally Union Pac. R.R. Co. v. U.S. Dep't of

require an ALJ to call upon a treating physician to "seek additional clarifying statements" when "a crucial issue is undeveloped." Id. (*citing* Snead v. Barnhart, 360 F.3d 834, 839 (8th Cir. 2004)). However, this Court is leaving the question whether to call upon treating physician Dr. Olson within the ALJ's prerogative. Perhaps she will find further testimony or records by Dr. Olson valuable in her deliberations, perhaps not. That is her decision to make. Regardless, the ALJ must clarify the inconsistencies identified by this Court. Lastly, the ALJ need not look for alleged records authored by Olson due to no persuasive showing of prejudice against the claimant from their omission, let alone satisfying to this Court that they exist.

### 2. *ALJ is not Required to Search for Unidentified Records*

Finally, Busch argues the ALJ must "fully and fairly develop the records from . . . Dr. Olson" which are "missing from the appeal record." REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, doc. 24 at 4–5. Because the plaintiff fails to show how these alleged missing documents were prejudicial to her adjudication, the ALJ holds no such obligation.

A "'reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.'" Haley v. Massanari, 258 F.3d 742, 750 (8th Cir. 2001) (*quoting* Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)). But plaintiff fails to show how these alleged missing documents are crucial to her adjudication, let alone that these records exist. Busch notes that the "appeal record contains no treatment notes from Dr. Olson between 1/4/16 ([A.R.] 940-963) and 4/16/20." MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, doc. 22 at 16. That is true, but plaintiff fails to (1) explain *what* these records are; (2) *how* they relate to this matter; and (3) *why* she is prejudiced by having these records not be considered. As a

---

Homeland Sec., 738 F.3d 885, 897 (8th Cir. 2013) ("'It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'") (*quoting* Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004)). See also Lopez v. Davis, 531 U.S. 230, 241 (2001) ("Congress' use of the permissive 'may' in [the statute] contrasts with the legislators' use of a mandatory 'shall' in the very same section. Elsewhere in [the statute], Congress used 'shall' to impose discretionless obligations"). This Court applies the plain language of SSR 18-01p, which makes bare that this Court does not have the discretion to require the ALJ to call upon a medical expert.

preliminary matter, Ms. Busch does not even present to this Court what these missing records are, let alone substantive indicia of their existence. This Court will not command the ALJ to pursue a goose-chase on such weak assertions. As the Commissioner has rightly noted, "[p]laintiff has still not shown that the ALJ's decision would be different if other records from [Dr. Olson] were obtained." DEFENDANT'S BRIEF, doc. 23 at 13. Because the plaintiff has not met her burden to show why she was prejudiced by these allegedly missing records, the Commissioner's arguments on whether these documents would be material and whether Busch has good cause for the failure to incorporate them into the record below pursuant to 42 U.S.C. § 405(g) is moot.

This Court is only requiring the ALJ on remand to further develop the record in relation to the inconsistencies and confusion surrounding the July 2017 and April 2019 Olson letters, as explained above, see supra II.C; II.D.1. To reiterate, the Court is *not* mandating the ALJ also call upon an ME in making her determination on remand, which would be in clear contradiction with SSR 18-01p, and leaves it up to the ALJ to decide whether to solicit further testimony or evidence from treating physician Dr. Olson. Lastly, this Court does not require the ALJ to develop the record more fully with alleged missing documents pertaining to Dr. Olson from January 2016 to April 2020, because the plaintiff has failed to make clear what these purportedly missing documents state and how she is prejudiced by their lack of consideration. If the ALJ chooses to further look for these records, that is her prerogative, but it is not a requisite for proper adjudication.

### III. CONCLUSION

This memorandum and order does not mandate the ALJ to alter her EOD or preserve it as-is, that is her prerogative. Instead, the ALJ below must carefully parse through the Administrative Record and consider the December 2017 emergency room visit and assess how it may affect a finding of when the degenerative disc disease of the lumbar spine with neurogenic claudication arose and became sufficiently impairing. Specifically, the ALJ must assess whether the evidence supports a finding before the DLI when the hospital visit and January 5, 2018, MRI may lend credence to the condition's presence prior to January 1, 2018. Further, the ALJ must properly identify which

assertions are sourced from which notes provided by Dr. Olson and what weight is being provided to these different records when determining the onset of the anxiety-induced IBS, particularly when the April 2019 letter appears to anchor the ultimate EOD's selection as April 1, 2019.

Rather than commanding the administrative court below to find a specific EOD, the Court requires the administrative judge below to delve back into the record and provide further clarity on what her ultimate decision will be. There may be persuasive evidence to support a finding of an EOD prior to Busch's DLI (December 31, 2017), because (1) records from the December 2017 emergency room visit and January 5, 2018, MRI provide possible evidence of the degenerative disc disease of the lumbar spine with neurogenic claudication prior to 2018, as well as (2) the documented history of IBS prior to the DLI. The Court also concludes that clarification is required on remand surrounding the July 2017 Olson letter being offered simultaneously "little weight," while also being quoted to emphasize when Busch was disabled by the ALJ. Ultimately, though, this Court's discernment of the EOD is of no import for the ALJ. Instead, she must go through the record once more and again decide what the appropriate EOD should be.

This memorandum and order does not require the ALJ to consider allegedly missing documents between January 2016 and April 2020 that still have not been presented by plaintiff, nor must she call upon an ME. And it is up to the ALJ's discretion on whether to solicit further evidence or testimony from the treating physician, Dr. Olson. Through further development and consideration by the ALJ below Ms. Busch may receive an EOD supported by substantial evidence.

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment, doc. 20, is granted in part and denied in part. The Acting Commissioner's decision to select an Established Onset Date of April 1, 2019, is reversed and this matter is remanded to the Commissioner for further proceedings consistent with this opinion. The Commissioner must: (1) consider the December 2017 emergency room letter in relation to her EOD related to plaintiff's degenerative disc disease of the lumbar spine with neurogenic

claudication; (2) clarify the record pertaining to hospital records authored by Dr. Jonathan Olson in relation to the claimant's EOD for IBS; and (3) the Commissioner must further develop the record, specifically by taking into consideration the December 2017 hospital visit and by explaining which records assert what information and what weight they are in fact awarded. It is left to the ALJ to decide whether to solicit further information from Dr. Olson. The Commissioner is also not required to search for allegedly missing records drafted by Dr. Olson, nor must she call upon an ME on remand.

DATED this 3rd day of December, 2021.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge